Ms. Merrill, please proceed. Thank you, Your Honor. May it please the Court. I made you go too fast. I don't want them to distract me from what you're saying, so I'll let that liberty sit down. Thank you, Your Honor. All right, go ahead. May it please the Court. Courtney Merrill, Counsel for Appellants. This is not a complicated technology test. This appeal comes down to counting, or more precisely, how to detect if a numbered data block is missing, just a gap in the numbers. The single prior art reference here, SACS, repeatedly discloses detecting a gap in a sequence of numbers. The question is whether these teachings, all again contained in a single prior art reference, can be considered together with SACS's overall teachings of an invention of a disclosed timer. We submit that it was legal error for the Board to partition SACS's teachings into separate disclosures and refuse to consider them together. There's two different issues. One is for anticipation, and the other is for obviousness. And one of the issues, and just to be clear, I'm very sympathetic with a lot of the arguments you've made, but this is probably the one about which I'm least sympathetic. And that is this idea on page 53 of your brief, where you seem to be suggesting that if it's in a single reference, it should be treated as all part of the same disclosure for anticipation purposes. That's a problem. Do you realize the Encyclopedia Britannica is a single reference? Do you realize Chisholm is a single reference? Do you realize treatises are a single reference? You had to do more than just say it's in a single reference. Now, in particular, I think this goes to your Figure 4 and 5 combination, but I don't think it goes to your 4 and 6. So you don't need to take it. You may still win despite not winning on this particular argument I'm asking about. I'm starting you with the one thing in your brief that most I didn't like. And I want to hear your explanation as to why the mere fact that things exist in a single reference makes them all part of the same analysis for anticipation purposes. I appreciate your excellent question, Your Honor. And you, in particular, are well-suited for that question, having been on both the net money and the vitrolic decisions that create this partition. And it sounds as though that particular statement was a little bit not fully worded. Because what we're trying to say is that Sachs' invention, that disclosure that's taught in the summary of invention, that's what the board refused to consider along with the particular examples provided later to show how that invention works when responding to different stimuli. And so, Your Honor, we're not trying to take the position that the Encyclopedia Britannica is a single reference and should be considered together. But here we're saying... But I got the sense that you were telling me that figure four and five should basically not be treated as two separate embodiments, but rather either one embodiment, though you don't really explain that, either before us or below. Or alternatively, that the mere fact that they are near each other in the same reference or something means that they're part of the same embodiment for an anticipation analysis. I'm just... This is the part I'm not following. So I refer, Your Honor, to page nine of Sachs where we've got this discussion where they identify this single system that has the timer that can either stop or expire. And then I refer to example figures four and five, which I admit Sachs inartfully described as embodiments. I think what they meant are examples. Because it's showing how that one single disclosed system responds to these stimuli, right? This is a box that's intended to receive data transmission. But here's my problem. The PTO, I defer to on fact findings and what the prior art discloses is a question of fact. And you'd like me to conclude that Sachs inartfully refers to things as two separate embodiments. I don't reassess this de novo. I give substantial evidence deference to the PTO's fact finding and to anything in the record that supports that fact finding. To the extent that they found that figure four and five are not the two separate arms of the same embodiment, how do I overcome that when the reference itself treats them as two different embodiments and I review under a subsequent standard? I'm very glad you raised that point because there is an inconsistency in the board's decision on that issue. At page 25, appendix page 25, the board found that this is the same structure in figures four and five. Same structure. But despite that, at appendix page 16, they specifically declined to consider whether it's the same embodiment. We respectfully submit and perhaps this is what you're responding to in the briefing, we don't think it matters if it's the same embodiment or called as an example. The point is it's the same structure. The same structure that's showing the summary of invention teaching of the use of this timer capable of stopping. Just so I understand, on that, there's not a contrary finding by the board? Not on figures four and five. There is as to six and seven. Correct, your honor. Your answer on six and seven is that SACS says on its face, I think you say, you can add these algorithms. Exactly. It's an additional unclaimed feature that goes far beyond and includes additional details beyond the claims that we're talking about here. If anything, it's as though the challenge we have with SACS is that it includes, from the perspective of RASIDA, additional detail never contemplated by the incredibly high level claims of the 396 patent, which is just operating without thinking about how this works in a real 3GPP system despite claiming that it is intended for a 3GPP system. If I may, you're exactly right, your honor. In your view of the matter, is there anything that we need to or should do about the point made in the dissenting APJ's dissent? I'm glad you raised the indefiniteness question, your honor. In case it wasn't clear from our briefing, we absolutely believe that these claims are indefinite, but that they are nonetheless under Intel v. Qualcomm, capable of being determined in terms of their patentability before the board. We don't believe that anything is necessary now. As the board pointed out in their claim construction analysis, the parties did impliedly consent to this construction that would, for purposes of just this proceeding, allow them to determine the patentability of all claims, even though we have this issue with 1C and 8C, where we absolutely agree it is indefinite. The problem for me with that is if it's indefinite, then I don't see how the prior art discloses it, but if I, like the board, treat it as being disclosed in front of the board, then in fact, by the device in SACS, which is articulated in the combination of figure four and figure six, which SACS itself expressly says to combine, I think that it's possible for you to prevail. But if it's indefinite, then SACS doesn't say that, because if what APJ Moore said is true, SACS doesn't disclose that. And so you can't have it both ways. If you're going to win on SACS, you're going to lose on indefiniteness, and that door can't be left open. Well, but this comes down to the CISFEL not opposing this implied claim construction from the board. The board's claim construction basically fixed the issue with the claims by interpreting it to be consistent with figure 12 in this application. So the question is a question of law. I don't defer to stipulations of claim construction or failure to object to claim construction. When I say what the claim construction is, it then binds everybody else. So if I'm going to go with this claim construction that likely has you prevailing on SACS, you don't have an indefiniteness argument anymore. So I'm going to point, Your Honor, to the policy discussion. Which one do you want? Well, I actually want both. I want my cake and I want to eat it, too, under the policy discussion of Intel v. Qualcomm. And the reason for that is that the court has recognized that it is often necessary to evaluate indefiniteness to protect the interests of the petitioner in securing a decision. If we were to, we would be losing all the effort and thought and analysis that the board put into these claims. Now, APJ Moore had very, I thought, clearly advised CISFEL to amend the claims in the institution's decision, and they decided not to. But you still want indefiniteness. You can't kill claims twice. If they're dead under SACS, why do you need to somehow hold onto the edge of the cliff by your fingernails on indefiniteness? It does not make sense to me. I'm glad you raised that question, Your Honor. So this patent has been asserted more than a dozen times to date. And in this, you know, the board doesn't unfortunately have the ability to determine indefiniteness. And so in this forum, this is the only way that the court can address what is a very invalid claim. It's invalid as anticipated, as well as invalid as indefinite. But again, you can't kill something twice. Explain to me why you're clinging to indefiniteness if you might win on anticipation. Well, you just hit it right there with your question, Your Honor. Might win. We would have to go to a federal court and ask them to evaluate indefiniteness, go through the burden, expense, and inconvenience. I think there's a failure of communication here. Oh, my apologies. So I thought the question was, suppose you win this case in this forum. Who cares about indefiniteness? Oh, I agree. Apologies. I misunderstood. No, I agree, Your Honor. Can I just double check something? Intel, Qualcomm, and there are a few other cases. I think I was on one of the other ones. Again, a name K or something. Have we ever said that what might otherwise be an indefiniteness problem of a claim in an IPR can be disregarded by an unopposed assumption about the meaning, about the claim construction? I don't believe I've seen that discussion from Your Honor. I've only seen the reference to whether or not it would be logically impossible. Where the parties and the majority of the board were in agreement as to what we believe these claims were intended to cover, I would argue it's not logically impossible. And the kind of stipulation or something here, just tell me more about that. There's no stipulation, Your Honor. Petitioner, we were petitioner in the below proceedings, had asked for plain and ordinary meaning as the claim construction. Sisfeld did not disagree. And the board and institution, again with a dissent by APJ Moore, had flagged this issue and recommended in many of the claims to fix this indefiniteness issue. There was no decision made and that the board decided, or excuse me, noted in the final written decision, is that the parties appear to have implicitly agreed to a claim construction that basically reads figure 12 and the disclosure of figure 12 as being this step 1C. And remind me, is that, does the other side now disagree with that on appeal here? It's not clear to me, Your Honor, for the briefing. Can I ask, in my understanding, if I was to agree with you that the board erred on anticipation, like let me give you, for example, go to JA 26, where the board says at the bottom, are you with me? One moment, Your Honor. All right, I'm there. The board says it's unclear how Petitioner intends to combine figure 4 and 6, okay? And it says, therefore, we determine Petitioner doesn't sufficiently carry its burden of showing unpatentability. Well, I'll tell you, I think SACS at page 14 actually says combine 4 and 6. So I think that is absolute, not supported by substantial evidence, that statement. So if I'm correct about that, then this results in a vacate and remand to the board for them to answer the question, because basically they're saying there's no reason to combine these, but what they haven't done is expressly decide that either figure 4 or figure 6 necessarily discloses the additional sequence limitation of claim 3. Am I right in my understanding of the process part? Well, you are, but I'd take a step back and say we actually think that there was an underlying error as well in terms of the anticipation standard that the board considered. I know, but I don't agree with you on that. So if you want your part, I do agree, possibly, if you want. Well, in addition to the point that you raised, Your Honor, we'd also point out that... Don't answer my question. Don't give me in additions. Answer my question. If I am correct in what I'm saying, is the answer I have to vacate and remand? Because while I think that the board may have erred in whether it was obvious to combine these two aspects of the SACS reference based on SACS's, in fact, disclosure that can be combined, isn't the answer I have to vacate and remand, though, because claim 3 adds a sequence element that the board just didn't address because they found no reason to combine it. I can't do that in the first instance. Agreed, Your Honor. Okay. Now you can tell me whatever else you want to know. Thank you, Your Honor. So for all of claims 3, 4, 5, 9, and 10, I'd also point out that the board declined to consider appellant's reliance on art that didn't require any combination, no matter whether or not you're describing it as another embodiment or not. So in particular for claims 3 and 9, we have discussion in the background that we had specifically cited that the board didn't consider, as well as in claim 4, we had discussion of figure 4. Let me ask you another question. Based on what I said before, which is, it seems to be particular to claim 3, does that extend, it doesn't extend to the other claims that you're appealing? What I was talking about before, the concern about figure 4 and figure 6, that seems to me to be relevant to the unpatentability of claim 3. Is it relevant to the other claims you're appealing 3 to 5, 9, and 10? Yes. I'm just trying to wrap my head. There's so many arguments in this case and so many different issues, and I'm just trying to wrap my head around which arguments go to which issues. There are, Your Honor. So claims 3 and 9 are identical, except for the claim from which they depend. And we had in the briefing, in the petition, relied on discussion regarding identifying a gap, not just in figure 6, but also in connection with the background discussion of the technology that the board just never considered. And we also cited to discussion in SACS regarding figure 4. And so we can almost set aside 4 and, excuse me, figure 6, set aside this issue of 4 and 6, because we did specifically mention the discussion on figure 4, which walks through an example of how you identify a gap. And so the same applies for dependent claim 4, where we'd also cited to at Appendix 292, the background discussion of identifying a gap, as well as at page 292 of the appendix, page 12 of SACS, line 25, to page 13, line 9, where again... I've got to be honest. I'm completely lost. Oh, I apologize. I know what you're arguing at this point. You've lost me. So try to bring me back. Yes, Your Honor. So we're arguing that the board found that we didn't provide a reason to combine with 6, but we had also independently pointed to the identification of a gap in figure 4. Combine 4 and 6? Right. Figures. My apologies. Why do you need a reason to combine 4 and 6, when SACS expressly tells you you can? Exactly, Your Honor. Why are you... Okay. Then let me just get you onto one other argument, which is the skilled artisan. On that point, it seems to me the answer would have to be, I think, to vacate and remand, because while certainly you have to be a skilled artisan, it seems that the board didn't do the assessment of whether the particular gentleman's experience may suffice to meet the bachelor's degree in electrical engineering, which he doesn't have. So while you're correct almost from a Chenery standpoint, meaning the board relied on his testimony and made it clear, and it's also clear he doesn't have precisely the background that they say, and in fact is missing one of what they call a minimum credential, basically. But based on years of experience, we have to leave room for the board to say this equates to. I mean, who's the guy that invented all computers in his garage but didn't go to college? There's people who are amazing and come up with these things and clearly could be qualified as an expert based on years of experience, but the board just didn't do it in this case. Is that the problem? We're not attempting, by the way, to diminish Mr. Bates' experience, but it's related to the physical laying of equipment, not the actual design of the procedures, the protocols for transmitting data. Stop. Again, you're not going to get me to make a fact finding of whether he's qualified or not. So what you're arguing right now is completely irrelevant. My question to you is, what do I do precisely with the board's reliance on testimony of someone that didn't have one of the credentials they expressly articulated was something a skilled artisan would have? So we would recommend that it be remanded to be redetermined without reliance on his testimony. Why? Why do I have to tell them not to rely? I mean, somebody with a bachelor's degree and three years of experience, to be clear, I have a bachelor's degree in electrical engineering. I have no business doing anything more complicated than turning the light switches on and off in my house. So isn't it possible that somebody, okay, maybe I have to say that more, but isn't it possible that somebody could have 40 plus years of experience doing electrical engineering like stuff, even though they don't have the degree and that the board might find that that satisfies? Which is why we briefed this issue at length and the underlying proceedings argued about it at the oral argument. Right. So I can't give you the answer on appeal. It's a fact of life. And given that there are issues to be decided on remand, which I think you agreed with, then it feels like what to do about Mr. Bates is not a question we can skip. I believe that's correct, Your Honor. Okay. Let's hear from opposing counsel. Robert Gallarza. Good morning, Your Honors. May it please the court. Robert Gallarza on behalf of Cross Appeal in Sysilville. I know there's a lot of issues in this appeal and there's probably a lot of questions about them. I'm happy to address them, but I would like to call the court's attention to two items from the Cross Appeal, namely that element 1C is not disclosed or practiced in sex and the board's conditionality requirement was wrong and if element 1C is not practiced, then all of the claims are valid. That would have resolved this entire case. And indeed, what I would like to do is start with 1C with a quick overview and then get into the specifics, because I think that's important to understand what's going on here. Namely, element 1C requires stopping the timer when the missing data block is missed. The petitioner relied on to teach element 1C figure 5 embodiment and they also explained that page 40 of the petition, which is Apex 275, note 11, they explained what the conditionality, this factual conditionality condition that the petitioner believed C and D would impose. Namely that C is not triggered unless the one data block is received. In other words, when you receive that data block, you perform C. If not, you go to D. That's how the petition put it. As Cicil will explain below, the SACS T reorder timer does not stop when you receive the data block. It stops when you receive all of them and the reordering procedure is complete and I'll walk the course specifically through that. The board, however, said on Apex 18 that SACS does not depict or describe anything else occurring after the receipt of the missing data block in order to trigger the stop of the timer. If we turn to figures 4 and 5, specifically figure 5, for the course convenience those can be found on Apex 14. If you look at the PDUs, the data blocks that are being received, the first one is 56. As SACS explains, that starts the timer because there are missing data blocks, namely 1, 2, 3, and 4. If you look at the next block that's received in 1, 2, the missing data block, at least one of the missing data blocks is received. The timer is not stopped when 1, 2 is received. If you look down at the figure when 3, 4 is received, the timer still doesn't stop. As the figure expressly says, stop timer when reordering is finished. And that's exactly what SACS describes if Your Honors turn to page 1280 of the appendix. SACS expressly describes, and this seems to be at least in my opinion agreed to by the experts, how this is read. That top paragraph on Apex 1280, this can be achieved by stopping the duration. Can you tell me what page and line number you're on? It's Apex 1280, it's lines 1 through 12. Are we in SACS? This is SACS, yes. Page number of SACS and line? Page number of SACS is column 14, I believe. The pages are a bit confusing, there's a lot of page numbers on there. If you're looking at the PDF page number on the bottom, it's page 16 of 34. I'm not, I'm looking at SACS. So what, page 14, and what line number? It's lines 1 through 14. This is what the board cited to, this is what the Sierra Wireless experts cited to, this is also what SISVL's expert discusses. In order to achieve the minimum reaction time, this is describing figure 5, the reordering delay shall preferably be stopped when all outstanding PDUs are received and the sent sequence is reestablished. That's what SISVL keeps referring the board to about how the timer is not stopped until the reordering is done. Indeed, that's exactly what the next sentence says. Stopping the duration of the T reorder timer when reordering is finished. Exactly as figure 5 says, plain on its face, to stop the timer when the reordering is finished. This is a method claim, right? Yes, your honor. In an example, I don't know whether one is shown, when there is a single missing data block and it comes in at that point, it would, even in your view, meet, SACS would even in the SACS element. It would have to stop the timer if it did, your honor. Right, so figure 4 is just showing an example where at the beginning there are four missing blocks, right, 1, 2, 3, and 4, and it's going to keep the clock running until all four of them come in. But in another, that teaches an example again where different stimuli, it seems to be the word people use, I think of it as input, where block 2 comes in, 1 is missing, SACS would say start the clock as soon as 2 comes in, stop it when 1 comes in. That would meet 1C. If that's what SACS said, it would. But it doesn't say that, your honor. What it says is stop the timer when reordering is finished. And in Apex 1280, the page... What about page 9, line 34? And the board cited this at page 17 of its opinion, which is why I'm directing you to it. It says in a preferred embodiment, the timer is stopped before the time expires when as a reception of a data packet, the sequence is established. So that doesn't seem to... The board cited that, why isn't that substantial evidence? I see your point about page 14, but I think Judge Toronto is saying that's not all there is in this reference. And what I'm pointing to is what the board cited, why isn't that substantial evidence for its fact finding? For the same reason we were talking about the other page, your honor. It's the last portion of the sentence. When at the reception of a data packet, the sequence is established. The sequence being established means rearranging the data packets, reordering the data packets, exactly as SACS describes on 1280. It says, if you look at that same paragraph we're reading from, that same language is there, when all outside APD is received and the sent sequence is reestablished. SACS uses that same word, sent sequence is established, reestablished. That's what SACS is talking about. If you look at the bottom of the page, what it's saying 3 to 4, and the sequence 1, 2, 3, 4, 5, 6, 7, 8 is reestablished. How does it get that sequence again? It takes the out of order PDUs and shuffles them back into the sequence. Just to be clear, this word reordering can mean two different things. One can be, I asked for that coffee, it hasn't come yet, I'm asking for it again. The other is putting things in a sequence that they were not in. When SACS uses the term reordering, which is it using? The latter, Your Honor. And that's shown on this page expressly where it says the sequence is reestablished. That's what it means. It lays it out 1 through 8. It says here's the original sequence you're looking for. 1 and 2 came out of order. It came after 5 and 6. You swap them. You put them in the right order in the buffer. That's not taught. So one element 1C is not taught by SACS. Element 1C again requires stopping the timer when the missing data block is received. Importantly, as I promised on conditionality, this disposes of all the claims because all the claims have this independent claim feature 1C. The board read the petition and agreed with the petition in terms of conditionality that you could perform A, B, and C or A, B, and D. And the problem with that is it doesn't make sense in terms of fact. It doesn't make sense in terms of logic. And it doesn't make sense in terms of the law. I'm trying to see if I can get to where you are on what reorder means. And on page 14 at about line 14, when SACS talks about reorder, part of my problem is I don't, if this were de novo, I feel like you'd have a much stronger case on whether SACS when it talks about reordering means putting an order versus initiating another order for the missing information. And so that's, I'm trying to just find the very best place where you think SACS most clearly leads to the sequence part as opposed to the request part. And at page 14, line 14, that paragraph again talks about reordering the data packets often leads to high delays in responding to the sender. However, if packet reordering occurs infrequently, the previous scheme may already be sufficient. Doesn't that seem to be using the word reordering in the context of reaching out to the sender for additional information as opposed to putting an order? I don't read it that way, Your Honor. No. If you look at the example above, it clearly states that the T reorder started after receiving and the sequence is reestablished. And therefore, the timer is stopped. Dr. Kakey is also, CRO Wireless is an expert at APEX 1172, also explained that SACS refers to reordering of PDUs in sequential order in the buffer. That's their own expert talking about reordering in the buffer. And that's exactly... What's that page again? APEX 1172, paragraph 154, it continues over to 1173, Your Honor. And indeed, I'm not aware of SACS talking about requesting information being the same as reordering. Requesting information is a request. It's a retransmission request. It's an ARQ. That's what the process is about. You have this section. Does SACS call it that? In terms of the request, there's status reports that it talks about all throughout, Your Honor, yes. No, no. Does SACS... I'm, again, trying to find support for what you're suggesting. So does SACS expressly distinguish reordering from requesting, for instance, referring to the outreach for the packet? Do you understand? I see reorder everywhere in here. And so... And reorder means... I don't believe there was a dispute below that reorder means reordering the PDUs. I mean, that's what SACS describes it as. When it talks about the status report is removed in the buffer and transmitted, that's where it's sending something. Reordering on its face means that. And that's exactly what SACS is talking about. It's the whole purpose of the T, reorder timer, is that you are reordering them. The board said there was nothing that depicts or describes it. And if Your Honors disagree that it's that clear, at least it would have to have a remand to the board to explain that. Because the board's finding on Apex 18 that nothing depicts or describes something else being done is not accurate. Okay, well, I guess the problem is the board also talks about the timer stopping in response to reception of the data packet with regard to SACS. And so I have to conclude, you're right. I mean, the board... Reordering is certainly linked, both by figure five and the text. But the board also seems to hinge its determination on the reception of the data packet, not just the reordering. So... And it's that same line. Why is that wrong? It's that same line that you cited, Your Honor, that it's expiry when at the reception of the data packet. The problem with the board's opinion is it just doesn't read the rest of the sentence. When at the reception of the data packet, the sequence is established. And that's what SACS is talking about. In order to achieve the minimum reaction time and link protocol, specifically talking about figure five, which is what the petition relied on exclusively, SACS expressly teaches that it's stopped when all the outstanding PDUs are received. That's why it doesn't stop when you get one, two, which alone should have triggered D under the conditionality of factual condition that was established in the petition. But it doesn't. And the reason is it needs all of the PDUs in order to shuffle them back into space. Okay. Just again, the same thing I asked for the opposing counsel. If I agree with you and if you're correct, that would mean I would vacate and remand the board's determinations that claims one, two, six, and eight are unpatentable, but the board would have to go back and consider them now in light of obviousness, which was also before the board on these claims, correct? We believe the obviousness was waived, Your Honor. They didn't explain how those items would actually be combined. To who? Waived before who? Waived before the board, Your Honor. Would they have to decide that? They haven't decided that. I can't decide that they waived something before the board, can I? No. In that case, Your Honor, you could decide it as we put in the briefing, but you'd have to remand and let the board decide that, yes. But here, the operation of SACS is so clear, you don't need to remand on element 1C. There's no other reasonable way to read the record. On the face of figure five, it expressly says stop timer one, two, six, and eight are unpatentable,   and I would like you to address the appellant's appeal. Is that what you're about to address? I was going to address the conditionality of the claims, which would be required under the board's interpretation. The board said you can do A, B, and D and still practice the claims. I'd like you to, you have 41 seconds, and I'm happy to be a little bit generous, but you need to address the appellant's appeal. The appellant's appeal, in particular for figures six and seven, Your Honor, we don't believe that they were established in the petition itself. It has a conclusionary statement that you could potentially combine all of them from the overall disclosure. That's not enough. It has to be a specific embodiment itself. In terms of the definiteness statement that came up and was discussed for a while, we don't believe that APJ Moore was saying that. I thought I'd get you to jump to the points that I am more concerned about. Why don't you address the expert who was relied on throughout by the board in its opinion? We believe his expert qualifications, as the board said on Apex 8, Your Honor, wouldn't have changed the board's opinion. I don't see how I don't have to vacate and remand on that point, unless I agree with I don't see how, because the board articulated what was required to be an ordinarily skilled artisan, and he doesn't meet those minimum requirements. He may. The board is, of course, free to determine that his years of experience suffice for a bachelor's in electrical engineering, but he doesn't have a bachelor's in electrical engineering, and it wouldn't be appropriate to let non-skilled artisans give testimony on these kinds of things. Two responses. Number one, Your Honor, is that there is precedent out there cited in the briefing that a proceeder or an individual can talk about things that are in their background if it's of assistance to the board. But I do agree with you, Your Honor, that if there is a problem there, if this court doesn't accept the board's finding that it wouldn't affect their opinion, then yes, remand would be... They didn't make the finding. They didn't analyze. They didn't even address the issue that he doesn't suffice under their articulated standard for what a skilled artisan is. They did not. What they said is Sysivol's was different. Sysivol's said you could have less education for more experience. That was Sysivol's proposed procedure standard, and the board said it didn't matter. If this court finds that it does matter, the proper course is to remand to the board for it to figure out if it does affect the outcome. But we submit that element 1C is so clear it doesn't, and conditionality itself, the board's conditional analysis... I want to get you to look really quick at figure 4 and 6, and in particular, the board's finding on JA 26, which is what I walked through opposing counsel with, where they suggest that it's unclear how petitioner intends to combine figure 4 and 6, and why a post-eater would have been motivated to make that combination. My problem is SACS itself expressly says, I guess what's the inside of that page, page 14, that you can combine, take the addition of figure 6 and add it into figure 4. So I don't know why they would need to articulate a motivation to make a combination the reference on its face suggests expressly. So if that's a concern, what happens then? Well, I would... I'm looking at page 14. I just don't see where SACS actually says you can combine 4 and 6. What SACS says is, to completely solve the problem of packer reordering, the previous scheme can be improved by adding at least one additional state variable to the receiver. The emphasis, I think, for current purposes should be on the words, by adding. Correct. It doesn't describe, as Sissel told the board, what would potentially have to be taken away. And there's distinctions between 4, 5, and 6. Specifically, what does the state variable do? When does the status report send? It's not the same scheme as 5. It's receiving one PDU instead of two in the pairs. This is all that was pointed out to the board. And I think that's... Wait. When it says to completely... I'm making sure I'm following. To completely solve the problem of packet reordering, the previous scheme, and I thought the previous scheme was referring to the prior paragraphs, which are about figure 4 and 5. Am I wrong? That would be my understanding, too. Yes, you're right. Okay. So we're talking about to solve the problem from figure 4 and 5 can be improved by adding at least one additional state variable in the receiver. Isn't that what figure 6 is about? State variables in the receiver? It is. But what that paragraph doesn't say is how you're actually going to combine those two. If you look at figures 4 and 5... But it doesn't have to say how. How is a different question than motivation? What the board found is you didn't... They didn't need the motivation to combine. That was their express finding on 26 and 27. Those are the exact words they used. They didn't say, and therefore doesn't explain how. They said they didn't satisfy the motivation, and that, it seems to me, is suggesting a combination even if it doesn't say how. I think what the board was likely trying to say is that the motivation to combine the elements as they are, and I think that's the problem, is that the petition doesn't explain how you would combine those elements and make it functional without removing something. How would you get from a system that receives pairs of PDUs to a system that receives singles? Okay, but I don't have to... On your view of things, I don't have to reach anything in the appellant's appeal if I agree with your arguments about reordering and putting in sequence and that being the trigger to stop the timer. Correct. And is that true regardless of the board's reliance on an expert who wasn't technically qualified as an expert? Yes, and because it's so clear on the record. No other reasonable fact finder would be able to... Well, but if you're correct, I have to vacate and remand, right? Isn't that the outcome if you're right? We would submit that reversal is because you can't read the sacks any other way. It's so clear, but yes, Your Honor, it would be vacate and remand. And if I vacate and remand, is there anything left for the board to do when I vacate and remand? I'm just wondering, again, there's so many issues in this case. I'm just trying to wrap my head around what has to be decided and depending on how I decide things. So if I were to vacate and remand on claims one, two, six, and eight, is there any necessity to decide any of the other questions? And in particular, the one that concerns me is the expert. No, we don't believe it would, Your Honor, because number one, the board said the qualifications of the expert didn't change its opinion. But number two, the record is clear. If I step back for a second, Saks says repeatedly that the trigger to stop the timer is not when the missing data, when the missing PDU in that example is received. My concern is, does that only go to anticipation and not obviousness? I mean, look, without a doubt, I think that they were wrong in relying on your expert without explaining why his credentials nonetheless suffice because he doesn't have the minimum credentials they articulated. So hands down, I think that's wrong. So what I'm worried about is, if I vacate and remand in your favor on your cross-appeal, what happens below, like, for example, obviousness? Does the board then pivot to obviousness on this issue even though it's not exactly disclosed by Saks? It would also be obvious to stop the timer at X point. I just don't know. And so I'm just trying to figure out, since that's on the table, should I also make it clear to them, oh, and by the way, if there's anything more that you need to do on remand, please be mindful of the fact that you didn't explain why Mr. Bates satisfies. Do you understand where I'm trying to go? I'm just trying to think about how I write an opinion. Absolutely, Your Honor. And so what I would draw your attention to is a portion of the last sentence you had there about, would it be obvious to add this in the absence of a teaching in Saks? And that specific argument was never presented in the petition. So the board would simply say on remand, that argument wasn't presented in the petition. One C is not taught. It's over. There's nothing that preserves that argument below. But again, the one C really matters here because of the conditionality analysis by the board, which was wrong. As a factual legal logic matter, this court, we cited it in Highterra and Lincoln. We cited Highterra to the board below. Those cases all collectively teach that every step of a method claim has to be ordinary. So what exactly would be the downside, apart from possibly it being advisory? I don't know. They made an obviousness argument in the petition. I don't understand the scope of that argument. You all have thrown so much at us in this case. What would be the downside of me saying, and by the way, if there's anything further to do, can you please articulate clearly why Mr. Bates nonetheless satisfies the minimum standards for the ordinarily skilled artisan because you can't just assume it when he doesn't have the minimum standards? The downside, I don't think there would be any, Your Honor. I think that would be totally reasonable for this court to say, while we're remanding, you can also do this if it affects the opinion. The board still has that statement on Apex 8 saying standard doesn't matter. But if this court disagrees, you can do that also. What would be of assistance, though, in this case, I would like to petition the panel, is to clarify the statements on conditionality that the board relied on here. And specifically, my friend from Sierra said that Lincoln is an early precedent of this court. 2010, I don't want to date myself, but 2010 doesn't seem that early to me. But the board's opinion in Schulhauser did reference this court's opinions, non-presidential opinions, in Appalachia and also Cyber Settle, which the board found to be persuasive in finding that conditionality, opposite of what Lincoln held, opposite of what Highterra held, has to be on a step-by-step basis. And all the steps do not need to be transformed if there's a gate that you're going through. And that would be of great assistance to the bar to clarify that question in a precedential opinion. We would submit that Highterra's analysis should be adopted as the correct one. Just out of curiosity, why do I need to reach that issue if I agree with you on 1, 2, 6, and 8, 1, 2 and 6 through 8, about the reordering versus, you know, why do I, I mean, what you're asking me to do is jump in, weigh in to a big issue of law that could affect lots of other cases when it may be unnecessary. Why do I need to do that? Or why should I do that? To be fair to the board. Is it because there might still be something open? The same reason I said, should I address the Mr. Bates thing? Is it because there might still be something open in this case that depends or hinges on conditionality? I mean, I'm just... Yes, Your Honor. So what the board found was they said you can do A, B, and D, or A, B, and C. And so they didn't find 4 and 5 as the same embodiment that disclosed both. What they found was 4 disclosed A, B, D, and 5 disclosed A, B, C, and therefore it's anticipated under either interpretation. And so if this court were to reverse on conditionality, that would have to be addressed. And the reason why that matters is if you reverse on conditionality, as this court held in Lincoln, every single step, even conditional steps, have to be met by the same embodiment. And that would be the instruction to the board. That would also then potentially dispose of all the issues because C is not met. And because C is not met, it doesn't matter if there's one that teaches D. In essence... Okay. I understand your argument way over time. Thank you so much, Mr. Garza. Ms. Merrill, you have rebuttal time. Give her the full time. Thank you, Your Honor. I'd like to go back to your very first question very briefly. And you had referenced and analogized Sachs to the Encyclopedia Britannica. I'm going to respectfully disagree that this single 30-page reference directed to a single invention with different figures showing how that invention works is an appropriate read. And that's exactly why I think Your Honor's authority in Vitrollic is the right authority to follow here. Because we're looking at a single invention, not the net money example where you've got very discrete different processes that would require a combination. Turning, unless there's any questions on the area of law, I'd like... I don't think that's... I think that you're completely wrong. I think that the point I was making, I was showing you why the legal standard that you're requesting is wrong, because it would extend all the way to the Encyclopedia Britannica. I never was analogizing this case to the Encyclopedia Britannica. The problem here, I mean, you could have a two-page reference, and if it discloses two different embodiments, you can't combine one and two and call it anticipation. It does not matter the length. I was pointing out to you the reason for the Court's long-standing rule of law that we don't combine embodiments in a reference for anticipation purposes. The reasoning behind it so that you understand. So, anyway, why don't you choose a different topic. You've got three minutes. All right. Turning to the next topic, I turn to counsel re-arguing the Board's factual determination at Appendix Page 18 regarding Limitation 1C. The Board spent two pages discussing all of the competing information, briefing, and arguments, and testimony from our expert and their declarant regarding this issue. We submit that the Board has already considered all the arguments being remade here in appeal, and that they're asking you not to decide this as a substantial evidence question, but rather as a redo of the Board's analysis. I think what I need you to really get directly to, and it's the only thing you should probably be talking about in your rebuttal, is this reorder issue. I need you to tell me why Mr. Garza isn't correct about the disclosure at Page 14, and the only thing the Board cites that contradicts his explanation is that little sentence at Page 9 spanning Page 10, but even the rest of that sentence talks about the sequencing. This is the biggest issue for you, and your entire case stands or falls on it. This is what you should have stood up with. At Page 17, I'd first refer you to the Board's citation to the complete sentence. In the preferred embodiment, the timer is stopped before the timer expiry when at the reception of a data packet, the sequence is established. That, in combination with the figure, Figure 5, that shows it's that same instance. Please stop. You're at Page 17. Where are you? Yes, Your Honor. Appendix Page 17, the bolded language, three lines from the bottom. At the reception. Now, where is that in the SACS? Where is that in SACS? That's in the Summary of Invention, Your Honor, on Page 9 of SACS, lines 24 to 26. Page 9, line 24. What? No, it's not line 24. It's the same material you were reading before. Oh, okay. I apologize. It's lines 34. I gave you the wrong line number, Your Honor. Yes. Line 34 on Page 9 of SACS, at the reception of the data packet, is that key language about timing. The Board did consider what their declarant had to say, regardless of whether he qualifies as an expert. They considered what he had to say and found that he did not provide any reason to believe that we're talking about two things that are occurring in series, as opposed to something that is occurring instantaneously with receipt of the missing data packets. Just so I can, I think I'm understanding what you're saying. So the next sentence at bottom of 17 is the Board expressing its interpretation of that sentence, but agreeing with Petitioner that it's the receipt of the missing data, not an artificial and separate reordering procedure to which the timer is tied. Exactly, Your Honor. Thank you. And that's the point you're making, right? Exactly, Your Honor. It's that language, which the Board also considers next to Figure 5, where you see at that same exact point, as soon as those data packets arrive, boom, the timer stops. And this is going to be acknowledging there might be, that there is perhaps some uncertainty about the exact quoted language, but this is the better interpretation, I think the better interpretation, it's the factual determination of the Board. But I'm thinking, part of the concern I have is that Figure 5. Yes, Your Honor. It says stop timer when reordering is finished. Which the Board specifically discussed is not a separate step that's being performed based on the evidence that was before it. Are you saying the word reorder doesn't mean putting the packets in the order that they're supposed to be? It means that they're all physically present. So, do you think that the Board expressly found that when packet 3 is received after packet 4, such that the order is 1, 2, 4, 3, that that has achieved reordering? That it has achieved the completion of the sequence, which I believe that they describe as reordering. I'm trying to understand what the word reorder means in the SACS reference, and did the Board make any express fact findings about what it means? They did make a fact finding that they agreed with our position that it's not something that occurs after an additional step at the top of appendix page 18, Your Honor. And what did they say? Where did they say what reorder means? We agree, on line 2, we agree that the cited evidence in SACS more closely supports petitioner's position. That doesn't say anything about what the word reorder means. That just goes to the ultimate conclusion of the timer being stopped when one of two things happens. I'm trying to understand what the word reorder means within the SACS reference. I submit that the explanation that it's not after the occurrence of some additional step is exactly defining that, Your Honor. That it's not a separate step that's occurring. And then the Board is then pointing, I think in the next sentence, to figure 5 and noticing in the language that says stop timer when reordering is finished is exactly at the moment 3 and 4 come in, not at some, you know, a few microseconds later when an additional process of rearranging the sequence occurs. That's what the Board is, this is what you think the Board is saying. Yes, and that is what we had argued below and consistent with the evidence that our expert has submitted in his declaration. But how can figure 5 stand for that exact fact finding at page 18 when figure 5 itself, when as soon as packets 3 and 4 come in, it says stop timing when reordering is finished. So it doesn't, the figure itself doesn't say stop timing when received. It says stop timing when reordering is finished. So in the proceedings below, the Board considered testimony both from CISFEL's declarant as well as from our expert and found that their declarant had no basis, no evidence, no support for this idea that he was trying to create these steps that occur in series, but did find credible our declarant, our expert's testimony on this issue, that a person of ordinary skill would have understood that that timer is stopping immediately. Where did the Board say that? Well, it found that it didn't agree in the next paragraph on page 18 that Mr. Bates did not explain why he believed reordering occurred before the timer stopped, either in his first declaration or in his second declaration. What do I do with that language in figure 5 though? Figure 5 expressly says stop timer when reordering is finished. How do I ignore that? But the line, it sounds silly, Your Honor, but the line on figure 5 shows that the timer is stopped the instant those data packets arrive. Well, and I think your reading is that is when reordering is finished. Correct, Your Honor. There's no additional, it's not saying stop the timing when an additional thing called reordering is finished.  And it would defeat the purpose. This is now. You are exactly right, Your Honor. It would defeat the purpose of SACS. The purpose of SACS is to make sure that as soon as those data packets arrive, that you are stopping the timer so that you aren't inadvertently sending out those spurious transmission requests asking for the data packets to be sent again. Adding a delay would be inconsistent with the entire teaching and purpose of SACS, just to ensure that the instant that they arrive, that you are not allowing that timer to continue running and run the risk of it expiring. Okay. Thank you, counsel. Mr. Gallarza, you have a little bit of, we'll give you two minutes of rebuttal time, and you have to limit it, obviously, to your cross-appeal. Yes, Your Honor. Thank you. May it please the Court, I would like to address the point about reordering potentially being retransmitting something. I would draw the Court to two points.  First is Apex 1173. This is the testimony, the declaration of appellant's expert. An appellant's expert says on that page, if you are looking about three lines from the top is where it starts, the timer continues until the RLC receives each of the expected but missing PDUs. Again, we already discussed this. That's not what 1C says. 1C doesn't say receive all of them. It says when you receive at least one, so it should have stopped at one too, but it didn't. It has a complete correctly ordered subset. That's, I think, where the Board was confused because simply receiving out of order PDUs doesn't make it correctly ordered. It can't as a matter of logic. It's going into the buffer sequentially. The explanation that I would like to call the Court's attention to is the next sentence there. When that occurs, figure five explains to stop the reordering is finished. Here, SACS refers to the reordering of the received PDUs in sequential order in the buffer. That is from their own expert saying reordering is putting it in sequential order in the buffer. That's exactly what figure five says on its face. That's exactly what SACS says at Apex 1280 at the top and explains it. In addition, SACS itself, and this is just in context of the words themselves, if you look at paragraph starting at line 15 going to lines 34, talks about the difference. If you look at the terminology in there, they have terminology about reordering, but in the middle at line 20 it says the request for retransmission of erroneous packets are denoted with status messages. Again, it's not reordering, it's asking for it again. That's, again, a status message. That's what the Board overlooked in 1C, which is plain on its face in the record. Submit requires reversal. Did the Board discuss the appendix 1173.exhibit 1002 at page 80? They did not discuss that, no, Your Honor, in their findings that are relevant here. Did you present that to the Board on this issue? 1173, yes, I believe so. I can find that citation. I'm almost positive that was referred to in our, at least our reply or post-institution response below, Your Honor, that starts at, that replies at 660 and then discussions of 1C and the elements there would be 513 is where it starts. Again, though, the reversal in C is necessary if this Court also finds that the elements are not conditional, which they're not. In that respect, I think a very quick analogy, if the method were simpler here, I know it's very complex, but if it's playing baseball in the winter and it's starting a game in the winter and if during the first inning the temperature drops by 10 degrees you stop the game and then the next provision is if you finish nine innings of the baseball game you sign points to the winner. The Board would say all you have to do to practice that claim is to sign points to the winner if you play nine innings. But that guts the heart of the claim. And here that's the factual part. Indeed, on Apex 275, note 11... Okay, done. Thank you, Your Honor.  Thank you. Thank both counsel. Case is taken under submission.